# EXHIBIT A-19

VM

**COMMONWEALTH OF MASSACHUSETTS**
**SUPERIOR COURT DEPARTMENT BUSINESS LITIGATION SESSION**

**SUFFOLK, ss.**

| | |
|---|---|
| **KATHLEEN VITA,**<br>**For herself and for the Class,**<br><br>**v.**<br><br>**BETH ISRAEL DEACONESS MEDICAL CENTER, INC.,**<br>**Defendant.** | **Civil Docket#: 2384CV00480-BLS1**<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT BETH ISRAEL DEACONESS MEDICAL CENTER INC.'S MOTION TO DISMISS THE COMPLAINT**

Date: August 4, 2023

David Quinn Gacioch (BBO#660784)
Annabel Rodriguez (BBO# 696001)
**McDermott Will & Emery LLP**
200 Clarendon Street, Floor 58
Boston, MA 02116
Tel:617-535-4000
dgacioch@mwe.com
anrodriguez@mwe.com

*Counsel for Defendant Beth Israel Deaconess Medical Center, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION........................................................................................ 1

I. This Court Should Follow the Massachusetts Appellate Courts by Applying the "Ordinary Course of Business" Exception Flexibly, in Keeping with Legislative Intent and the Rule of Lenity, to Avoid the Absurd Results Plaintiff Seeks ................................1

II. BIDMC's Alleged Conduct Clearly Occurred in the Ordinary Course of Business ...........4

III. No Secret Hearing or Recording Occurred. Notice, Not Consent, is the Legal Standard Here in Massachusetts.........................................................................................6

IV. This Case is Distinguishable from Alves v. BJ's Wholesale.............................................8

V. Plaintiff Must Establish Standing and Has Failed to Do So ..............................................8

VI. Conclusion ..........................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alves v. BJ's Wholesale Club, No. 22-2509-BLS1 (Mass. Super. June 21, 2023) ....................3, 8

Beard Motors, Inc. v. Toyota Motor Distribs., Inc., 395 Mass. 428 (1985) ..................................9

Comm. v. Gordon, 422 Mass. 816 (1996) ....................................................................................2

Comm. v. Hyde, 434 Mass. 594 (2001) ........................................................................................6

Comm. v. Jackson, 370 Mass. 502, 507 (1976) ............................................................................6

Comm. v. Moody, 466 Mass. 196 (2013) ......................................................................................1

Comm. v. Morris, No. SJC-12835 (Mass. July 25, 2023) ..................................................... 2, 6-7

Comm. v. Pierce, 66 Mass. App. Ct. 283 (2006)...........................................................................5

Comm. v. Rainey, 491 Mass. 632 (2023) .......................................................................................2

Comm. v. Rivera, 445 Mass. 119 (2005) ....................................................................................2, 6

Cousin v. Sharp Healthcare, No. 22-cv-2040, 2023 WL 4484441 (S.D. Cal. July 12, 2023) ........................................................................................................................1

Crosland v. Horgan, 401 Mass. 271 (1987) ...................................................................................5

Curtatone v. Barstool Sports, Inc., 487 Mass. 655 (2021).......................................................... 6-7

Dillon v. Mass. Bay Transp. Auth., 49 Mass. App. Ct. 309 (2000)........................................... 2-5

Doe v. Partners Healthcare Sys., Inc., No. 1984CV01651-BLS-1 (Mass. Super. Ct.)................................................................ *passim*

Hershey v. Mount Vernon Partners, LLC, Nos. 144901, 1984CV02666-BLS1, 2020 Mass. Super. LEXIS 97 (June 26, 2020) ...............................................................................6

Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008).................................................................8

In re Google Inc. Gmail Litig., 2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sept. 26, 2013) ........................................................................................................................4

Kurowski v. Rush Sys. for Health, No. 22-cv-5380, 2023 WL 4707184 (N.D. Ill. July 24, 2023) ................................................................................................................1

Johnson v. Frei, 93 Mass. App. Ct. 1111 (App. Ct. 2018) ....9

Leardi v. Brown, 394 Mass. 151 (1985) ....9

Loc. 1445, United Food & Com. Workers Union v. Police Chief of Natick, 29 Mass. App. Ct. 554 (1990) ....9

Mass. State Auto. Dealers Ass'n, Inc. v. Tesla Motors MA, Inc., 469 Mass. 675 (2014) ....9

Matera v. Google Inc., 2016 U.S. Dist. LEXIS 107918 (N.D. Cal. Aug. 12, 2016) ....4

O'Sullivan v. NYNEX Corp., 426 Mass. 261 (1997) ....3, 5

Pine v. Rust, 404 Mass. 411 (1989) .... 2, 8-9

Sudbury v. Mass. Bay Transp. Auth., 485 Mass. 774 (2020) ....7

Tyler v. Michaels Stores, Inc., 464 Mass. 492, 503 (2013) ....9

Walsh v. TelTech Sys., 821 F.3d 155 (1st Cir. 2016) ....9

Watkins v. L.M. Berry & Co., 704 F.2d 577, 582 (11th Cir. 1983) ....4

**Statutes**

M.G.L. c. 93A § 9 ....3

M.G.L. c. 272 § 99 .... *passim*

# INTRODUCTION

Plaintiff brought her claim under the Massachusetts Wiretap Act (the "Act"), M.G.L. c. 272 § 99. Accordingly, Beth Israel Deaconess Medical Center, Inc. ("BIDMC") bases its motion to dismiss squarely on Massachusetts law. In her opposition ("Opposition" or "Opp'n"), Plaintiff unconvincingly attempts to distinguish some of the Massachusetts authorities that BIDMC cites, and briefly cites a few others, but quickly pivots to a litany of (mostly unreported) decisions from other jurisdictions, interpreting other jurisdictions' (non-identical) wiretapping/ eavesdropping statutes.[1] But this case is governed by ***Massachusetts*** law. As BIDMC's opening brief ("BIDMC Br.") demonstrates, and as further addressed in this reply, under Massachusetts law, the Court should dismiss the Complaint without leave to amend.

## I. This Court Should Follow the Massachusetts Appellate Courts by Applying the "Ordinary Course of Business" Exception Flexibly, in Keeping with Legislative Intent and the Rule of Lenity, to Avoid the Absurd Results Plaintiff Seeks.

Plaintiff contends that the SJC has directed courts to "construe the [Act]'s terms broadly to effectuate [its] legislative purpose." (Opp'n at 4.[2]) In truth, the opposite is required. In 1968, the General Court rewrote the Act as a criminal statute with just one private civil cause of action near the end (§ 99(Q)—at issue here). See M.G.L. c. 272 § 99. The Act even uses the same criminal definitions of "interception," "intercepting device," and "wire communication," for that lone civil provision. See id. §§ 99(C)(1), 99(Q). Because the Act is a criminal statute, the Rule of Lenity ***requires*** that it be construed narrowly, with all ambiguities resolved in a defendant's favor, whether applied in a criminal or noncriminal context. (See BIDMC Br. at 3 & n.2.) Plaintiff has no response. She addresses the Rule of Lenity not once in her 25-page Opposition.

---

[1] In so doing, Plaintiff omits several non-Massachusetts cases that have dismissed similar claims. See, e.g., Cousin v. Sharp Healthcare, No. 22-cv-2040, 2023 WL 4484441 at *1 (S.D. Cal. July 12, 2023) (dismissing California Invasion of Privacy Act claims based on similar allegations); Kurowski v. Rush Sys. for Health, No. 22-cv-5380, 2023 WL 4707184 at *1 (N.D. Ill. July 24, 2023) (dismissing federal Wiretap Act claim based on similar allegations).

[2] Plaintiff cites Comm. v. Moody for this proposition, but Moody actually says only that two of the Act's "statutory definitions" are themselves ***worded*** broadly (by the General Court—not through expansive judicial interpretation). See 466 Mass. 196, 206 (2013).

That is not surprising. The SJC's and Appeals Court's Wiretap Act decisions have consistently interpreted the Act more ***narrowly*** than its text might literally suggest, in keeping with legislative intent and to avoid absurd results.[3] The SJC most recently did so just days ago, in Commonwealth v. Morris, ruling that undisclosed audiovisual recording of a custodial interview did not violate the Act because, *inter alia*, the defendant knew officers were recording his statements by taking notes and the officers made general references to others hearing the defendant's story.[4] Taken as a whole, the body of caselaw applying the Act points in the very same direction as the Rule of Lenity does: dismissal of Plaintiff's Complaint.

Dillon is particularly instructive. There, as here, plaintiffs' counsel pursued a class action for statutory damages under § 99(Q), the defendant argued that "interception" did not reach measures undertaken in the ordinary course of business, and the plaintiffs countered with a strictly literal reading of the Act's text—there, trying to limit the exception only to equipment supplied by the phone company (a "communications common carrier"), rather than procured from another source. 49 Mass. App. Ct. at 310. Both the Superior Court (Judge Smith) and the Appeals Court rejected the plaintiffs' textual literalism and ruled instead for the MBTA and

---

[3] See, e.g., Comm. v. Rainey, 491 Mass. 632, 642-43 (2023) ("[b]ecause we assume generally that the Legislature intends to act reasonably, we will not adopt a literal construction of a statute if the consequences of such a construction are absurd or unreasonable."); Comm. v. Rivera, 445 Mass. 119, 134-35 (2005) (Cowin, J., concurring in part) (elevating legislative intent over expansive literal reading of the Act's text); Comm. v. Gordon, 422 Mass. 816, 832-33 (1996) (noting that the Act could "be read literally as making unlawful the audiotaping of [police] booking procedures without the knowledge of the persons being booked," but declining to so interpret it); Pine v. Rust, 404 Mass. 411, 415-16 (1989) (rejecting plaintiffs' literal reading of § 99(Q) concerning punitive damages to maintain longstanding common law prerequisites); Dillon v. Mass. Bay Transp. Auth., 49 Mass. App. Ct. 309, 315-16 (2000) ("interpretation should tend to preserve the substance of a statute rather than diminish it, should not override common sense, or produce absurd or unreasonable results") (citations omitted from all).

[4] No. SJC-12835, at 17 (Mass. July 25, 2023) ("Regardless of whether the defendant recognized the electronic recording device as a thermostat, motion sensor, or camera, it strains credulity to conclude that [he] did not understand that his statement was being memorialized. 'The resulting video footage was not a clandestine recording precluded by the [Act]...'") (quoting Rainey, 491 Mass. at 644.) A copy of the Morris opinion is provided in the Addendum.

common sense. Id.[5] The Appeals Court explained that:

> We do not depart lightly from the express wording of a statute … but in the unusual circumstances appearing here we agree with the court below that a deviation is justified. The fact that there has been no amendment of the Massachusetts statute comparable to the Congressional action of 1986 does not bar us from reading the exception so as to preserve it in its intrinsic intended scope and maintain its viability in the broad run of cases; ***the plaintiffs' proposal would in effect destroy the exception***. Thus the decision below comports with the canons that interpretation should tend to preserve the substance of a statute rather than diminish it …; ***should not override common sense …; or produce absurd or unreasonable results*** … — in this case the absurdity of allowing the fortuity of the source of the equipment to entail serious material consequences.[6]

Plaintiff here relies on a similar absurdity of textual literalism. She argues that, in 1968, the General Court created a prohibition against interceptions of oral and wire communications that was expansive enough to cover 21st Century website technologies that the General Court could not possibly have imagined at that time (when basically all wire communications involved interpersonal messages or conversations traveling on telephone or telegraph lines). Plaintiff then argues that the counterbalancing exception the General Court created at the same time is strictly limited to the use of traditional telephone equipment. Plaintiff's desired outcome is exactly what the Dillon court took pains to avoid: as communications technology and norms evolve over time, the exception gets smaller and smaller compared to the corresponding prohibition—"in effect destroy[ing] the exception" and throwing off the original legislative balance.[7]

---

[5] Indeed, undersigned counsel can find ***no case*** in the 50+-year history of the Act in which the SJC or the Appeals Court has ruled in favor of a putative class of plaintiffs or otherwise in support of broad-scale (as opposed to narrowly targeted) liability under the Act. Notably unlike, e.g., M.G.L. c. 93A § 9(2), the General Court did not include in the Act language contemplating class actions. The recent wave of attempts to wield the Act broadly is novel and unprecedented.

[6] Id. at 315-16 (citations omitted; emphases added). Judge Krupp quoted this language in Alves v. BJ's Wholesale Club, with seeming interest, but ultimately declined to follow Dillon's lead absent further appellate guidance. See No. 22-2509-BLS1, at 11 (June 21, 2023). This Court should rule differently, following both Judge Smith and the Appeals Court in Dillon.

[7] Plaintiff argues that O'Sullivan v. NYNEX Corp. "reaffirmed that 'telephone equipment does **not** include eavesdropping devices external and extraneous to **regular telephone devices**.'" (Opp'n at 21 (quoting 426 Mass. 261, 265 (1997) (emphasis in original).) Plaintiff ignores that both O'Sullivan and later Dillon interpreted the Act's ordinary course of business exception increasing flexibly to accommodate technological and market changes over time, rejecting narrow, literal constructions urged by groups of plaintiffs seeking statutory damage awards.

Moreover, Plaintiff's literal textualist approach requires the Court to believe that the General Court in 1968 created a robust exception within its indisputable core area of concern (secret eavesdropping on interpersonal telephone conversations) but did not intend that exception to apply in more peripheral—or strained—applications of the Act. In Plaintiff's telling, in 2023, it is lawful for a business to secretly record and share telephone interactions with its customers if done in the ordinary course, using telephone equipment. But it is simultaneously a potential ***felony***, and a basis for punishing statutory damages, for the same business to secretly "record" and share, in the ordinary course, those same customers' interactions with its website—simply because no telephone equipment is used for the latter. In short, the further out one travels from the General Court's core area of concern in 1968, the ***broader*** the criminal and civil liability get—all with no hint of an explanation for such backwards treatment. That defies common sense.

The General Court struck a balance in 1968—banning surreptitious eavesdropping while exempting ordinary course of business activities by legitimate organizations. Plaintiff wants the benefit of the ban (and the resulting statutory damages) without the counterbalancing hindrance of the exception. This Court should follow Dillon in rejecting that approach.

## II. BIDMC's Alleged Conduct Clearly Occurred in the Ordinary Course of Business.

Plaintiff also argues that "ordinary course of business" means, in effect, "business necessity"—and that BIDMC's alleged conduct was not strictly necessary. (See Opp'n at 23.) It is telling that Plaintiff had to go so far afield to find support for that argument, citing not one Massachusetts case and instead relying entirely on one unreported Northern District of California decision from a decade ago, which was discussing the federal wiretap statute and doing so in the very specific context of that statute's application to communications common carriers.[8]

[8] (See Opp'n at 22-24 (relying upon In re Google Inc. Gmail Litig., 2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sept. 26, 2013) (Koh, J.).) Plaintiff briefly cited two more federal decisions in that section of her Opposition, both also interpreting the federal statute, for the proposition that a company cannot unilaterally define the scope of its "ordinary course of business" for purposes of the exception. (See id. (citing Matera v. Google Inc., 2016 U.S. Dist. LEXIS 107918 (N.D. Cal. Aug. 12, 2016) (Koh, J.); Watkins v. L.M. Berry & Co., 704 F.2d 577, 582 (11th Cir. 1983).) That is just a straw man. BIDMC has not claimed such boundless authority.

***Massachusetts*** law is different. Drawing on two SJC decisions, the Appeals Court repeatedly has held that "'ordinary course of business' translates as 'legitimate business purpose.'"[9] No showing of necessity is required. And it is clear that BIDMC's alleged activities here fall within that Massachusetts definition. Plaintiff herself pleads that BIDMC "use[d] tracking technologies to optimize its website or its marketing for a website" (Compl. ¶ 107)—both clearly legitimate business purposes (and increasingly necessary for any organization to operate effectively in the digital age).

Additionally, the Court should take judicial notice of the fact that plaintiffs' firms recently have sued at least ***fourteen*** Massachusetts hospitals, health systems, and medical groups over similar alleged conduct (and many more nationwide), including nearly every major provider/system east of Springfield: Partners Healthcare, Dana-Farber Cancer Institute, Southcoast Hospitals, Emerson Hospital, UMass Memorial Health Care (x3), Atrius Health (x2), Cape Cod Healthcare, Steward Health Care System, Boston Medical Center (x2), Boston Children's Hospital, Lawrence General Hospital, Tufts Medical Center, New England Baptist Hospital, and BIDMC. (See Ex. C.) Further, Plaintiff's Counsel's website declares that "numerous healthcare providers" in Massachusetts engage in similar tracking activities, listing (beyond the above), e.g., Charlton Memorial Hospital, South Shore Medical Center, and "numerous urgent care facilities."[10] Against that backdrop, there is no need for discovery. The Court already has a sound basis on which to find that the ordinary course of hospital business in

[9] See Comm. v. Pierce, 66 Mass. App. Ct. 283, 287 (2006); Dillon, 49 Mass. App. Ct. at 319 (citing O'Sullivan, 426 Mass. at 266; Crosland v. Horgan, 401 Mass. 271 (1987)).

[10] See "Healthcare Provider Websites Mishandling Confidential Patient Information," available at: http://www.shulaw.com/About-Us/Investigations/healthcare-provider-websites-mishandling-confidential-patient-information/ (last accessed August 4, 2023) ("Shapiro Haber & Urmy is investigating the improper disclosure of confidential medical or health information by ***various Massachusetts healthcare providers (including hospitals, urgent care facilities, and health insurers)***. ***Our investigation has revealed that numerous healthcare providers*** share the confidential health information with Google, Facebook, and other third parties, when patients or other health care consumers use the healthcare providers' websites.") (emphasis added). A copy is attached as **Exhibit D**. In that context, Plaintiff's protestation that "many hospitals have **not** been sued," (Opp'n at 24 (emphasis in original)) seems to be missing a "yet" at the end.

the 2020s includes the use of website tracking technologies, such as alleged here.[11]

## III. No Secret Hearing or Recording Occurred. Notice, Not Consent, is the Legal Standard Here in Massachusetts.

In its opening brief (pp. 11-15), BIDMC addresses multiple, independent reasons why any alleged "hearing" or "recording" of "communications" clearly was not secret. Plaintiff counters that "a defendant must prove plaintiff's 'actual knowledge' of an interception to establish an interception was not secret." (Opp'n at 12, 19 (citing Comm. v. Jackson, 370 Mass. 502, 507 (1976)).) Not so. In truth, it is ***Plaintiff's*** burden to plausibly plead, and then to prove, secrecy—a required element of her § 99(Q) claim. It is not BIDMC's burden to disprove it.[12]

Moreover, "actual knowledge" can be inferred from the circumstances. The SJC said as much in the very same sentence of Jackson that Plaintiff quotes. 370 Mass. at 507. The SJC and Appeals Court subsequently and repeatedly have confirmed that ***notice*** (in the form of, e.g., warnings about potential recording) suffices to create "actual knowledge" and, thus, to eliminate secrecy.[13] BIDMC indisputably provided a warning that data about website users' activities was being collected (*i.e.*, "recorded"), by BIDMC and at least one third party.[14] There was no secret.

In her Opposition (pp. 12-15), Plaintiff quietly tries to shift the conversation from the actual legal standard (knowledge/notice) to a more plaintiff-friendly concept of ***consent***, again

[11] Indeed, while not yet part of the record, such website tracking technologies are so ordinary and so commonplace in 2023 that one can find them on, e.g., https://malegislature.gov/, https://www.mass.gov/orgs/massachusetts-court-system, https://www.mass.gov/orgs/office-of-the-attorney-general, https://www.boston.gov/, https://www.hhs.gov/, etc., etc.

[12] See, e.g., Curtatone v. Barstool Sports, Inc., 487 Mass. 655, 656 (2021) (affirming dismissal of § 99(Q) claim); Hershey v. Mount Vernon Partners, LLC, Nos. 144901, 1984CV02666-BLS1, 2020 Mass. Super. LEXIS 97, at *12-*13 (June 26, 2020) (Green, J.) (dismissing § 99(Q) claim).

[13] E.g., Morris, No. SJC-12835, at 7-9 (officers' visible note-taking and verbal references to the audience for defendant's story sufficient notice of audio-visual recording); Curtatone, 487 Mass. at 659 ("no violation of act where recording party simply informs those involved of intention to tape record encounter, or even holds tape recorder in plain sight, regardless of identification") (citing Comm. v. Hyde, 434 Mass. 594, 603-605 (2001)); Rivera, 445 Mass. at 134 (Cowin, J., concurring in part) (security cameras in plain view sufficient notice of audio recording).

[14] See Exs. A and B ("We and our Third Party Service Provider collect and save …").

relying heavily on out-of-state decisions interpreting non-identical statutes. But that is not the law here in Massachusetts. Knowledge and notice are the relevant questions regarding the required element of secrecy; express permission or consent clearly is ***not*** required to comply with the Act. E.g., Morris, No. SJC-12835, at 3-6; Curtatone, 487 Mass. at 658-59.

Building on the red herring concept of consent, Plaintiff then argues that consent is party-specific: "The fact that one party consents to the other party hearing or recording a communication does not mean the party also consents to third-party eavesdropping." (Opp'n at 12.) This is basically the same plaintiff-side argument that both Judge Hogan and the SJC rejected in Curtatone. There, Mayor Curtatone gave consent only for the *Globe* to hear and record the call—not for Barstool Sports to do so. 487 Mass. at 657. When the mayor brought his § 99(Q) claim against Barstool for its flagrant deception, Judge Hogan dismissed it and the SJC affirmed—because the ***act of recording*** was not secret, even if the identity of the recorder was falsified. Id. at 659.[15] Here, similar to Curtatone, Plaintiff was on notice that her interactions with BIDMC's website were being "recorded"—in this case, by both BIDMC and a third party. Unlike Curtatone, there was no subterfuge. Her claim, like Mayor Curtatone's, fails.

Plaintiff contends that, in denying Partners Healthcare's motion to dismiss in 2020, Judge Davis "rejected the argument that there 'was nothing secret about any of the Hospitals' using [Google Analytics and Meta Pixel] to track activity,' explaining, 'this is another situation where [the Court is] bound by the allegations of the complaint.'" (Opp'n at 13.) If so, Judge Davis erred in that respect. Secrecy is a required element of a § 99(Q) claim and a legal conclusion—just as duty or breach would be in a negligence action. In evaluating motions to dismiss, Massachusetts courts "do not regard as true legal conclusions cast in the form of factual allegations."[16] And

[15] Plaintiff claims that Curtatone "stands for a narrow proposition: one party's consent to the other party's recording is valid even when the consenting party was deceived about the other party's 'identity.'" (Opp'n at 14.) Not so. The SJC explicitly stated that it "need not reach the question whether there was prior authority (i.e., consent)" because plaintiff failed to plausibly plead secrecy—thus, there could be no interception under the Act. 487 Mass at 658.

[16] Sudbury v. Mass. Bay Transp. Auth., 485 Mass. 774, 778-79 (2020) (quoting Leavitt v. Brockton Hosp., Inc., 454 Mass. 37, 39 n.6 (2009)).

factual allegations must be plausible. See Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). For both reasons, Plaintiff cannot simply allege secrecy and bypass Rule 12 scrutiny. The record properly before the Court on this motion shows there was no secret.[17]

## IV. This Case is Distinguishable from Alves v. BJ's Wholesale.

In its opening brief (pp. 18-20), BIDMC points to multiple reasons why the Partners Healthcare decision does not control this case. The same is true of Judge Krupp's decision in Alves. For example, there is no indication that BJ's disclosed the collection of website browsing data by itself and by third parties, as BIDMC did here. As another example, in its motion to dismiss, BJ's focused heavily on arguments based in federal, California, and/or Florida wiretapping laws, rather than the Act, including as to provisions in those statutes that materially differ from the Act. Key Massachusetts precedents such as Curtatone, Rainey, etc. appear nowhere in BJ's briefing or, as a result, in Judge Krupp's decision. Here, in contrast, BIDMC focuses its arguments for dismissal squarely on the Act and the Massachusetts decisions interpreting it. Finally, BIDMC explained above why this Court should take a different path than Judge Krupp took on the "ordinary course of business" exception (supra pp. 1-4 & n. 6).

## V. Plaintiff Must Establish Standing and Has Failed to Do So.

Nor is Plaintiff relieved of the usual burden of plausibly pleading "real and immediate" injury to establish standing. (See BIDMC Br. at 6-7 and cases cited.) Plaintiff contends that the literal wording of § 99(Q) ("[a]ny aggrieved person … shall have a civil cause of action … and shall be entitled to recover…") automatically grants her standing, arguing that "[n]othing in the [Act] suggests a plaintiff must plead or prove any additional injury or damage." (Opp'n at 5-6.) Here, again, she is incorrect. She makes the same argument that the plaintiffs made, and the SJC rejected, regarding punitive damages in Pine. See 404 Mass. at 415-16. The Pine plaintiffs

[17] Plaintiff notes that the Act covers surreptitious interception of digital interpersonal communications such as emails and text messages. (Opp'n at 13 and cases cited.) True. Those are the 21st Century equivalents of telegraph messages between people, which the Act clearly was designed to cover. Website browsing activity is very different from such interpersonal communications, and much further afield of the General Court's 1968 concerns.

argued that § 99(Q)'s "shall be entitled to recover…" wording meant that the General Court had exempted them from well-established common law prerequisites for obtaining punitive damages. Id. The SJC disagreed—elevating common sense, precedent, and inferred legislative intent over such literal textualism. Id.[18] BIDMC does not dispute that the General Court has the ***power*** to override common law standing doctrines when it is explicit in so doing, but it simply has not done so in § 99(Q).[19] That being the case, Plaintiff clearly fails to carry her burden to plausibly plead standing, given that her Complaint alleges next to nothing about her own experiences, to say nothing of any real and immediate injury to her. (See BIDMC Br. at 6-7.)

## VI. Conclusion.

The fundamental question of law before the Court extends far beyond this case: have the thousands of Massachusetts businesses, non-profit organizations, and government agencies that currently use website tracking technologies thereby potentially committed felonies? Are they each liable for millions of dollars of statutory damages as soon as plaintiffs' attorneys discover them and bring class action complaints? That would be the absurd but true consequence of

---

[18] Plaintiff also asserts that Pine resolved the question of standing under the Act. (See Opp'n at 7.) Not so. Any such language in Pine would be *dicta*. The defendants in Pine contested the plaintiffs' entitlement only to punitive damages absent proof of harm (on which the defendants prevailed), not their standing to sue. The word "standing" appears nowhere, and the SJC did not cite any of its precedents on the issue. Pine also relies in part on Leardi v. Brown, 394 Mass. 151, 162-63 (1985), from which the SJC subsequently has distanced itself. See Walsh v. TelTech Sys., 821 F.3d 155, 161 (1st Cir. 2016); Tyler v. Michaels Stores, Inc., 464 Mass. 492, 503 (2013) (holding that c. 93A § 9 claim requires showing of actual injury, not just *per se* statutory violation). Contrary to Plaintiff's contention, standing similarly was not litigated in Johnson v. Frei, 93 Mass. App. Ct. 1111 (App. Ct. 2018) (sufficiency of the evidence challenge on the merits) or in Partners ("standing" appears nowhere in the defense motion to dismiss, the Rule 12 hearing transcript, or Judge Davis's resulting order—see Opp'n Exs. A-C).

[19] Plaintiff cites Beard Motors, Inc. v. Toyota Motor Distribs., Inc., 395 Mass. 428 (1985); Mass. State Auto. Dealers Ass'n, Inc. v. Tesla Motors MA, Inc., 469 Mass. 675 (2014); and Loc. 1445, United Food & Com. Workers Union v. Police Chief of Natick, 29 Mass. App. Ct. 554 (1990) in a manner that implies that those courts found legislatively-granted standing to exist despite no plausibly-alleged, concrete injuries. (See Opp'n at 6.) In truth, and conveniently omitted from the Opposition, the court in each case ruled that the plaintiff ***lacked*** standing, just as this Court should do. See Beard Motors, 395 Mass. at 428; Tesla Motors MA, 469 Mass. at 676; Police Chief of Natick, 29 Mass. App. Ct. at 560.

accepting the legal arguments on which Plaintiff's claim relies. And the wave of similar cases filed in wake of Partners, including this one, shows that such impacts have already begun.[20]

Plaintiff chides BIDMC for citing such real-world consequences, cavalierly noting that "Partners Healthcare remains in business" following the 2020 denial of its motion to dismiss. (Opp'n at 25 n.31.) True, Partners is still in business—but only after having to pay an $18.4 million settlement, including a $4.2 million attorneys' fee award to another plaintiffs' firm, rather than face the risk of crippling statutory damages had it litigated further. That outcome condemns, rather than supports, Plaintiff's position here. Not every hospital has $18 million available to pay a class action settlement based on this novel application of the Act—especially in the Massachusetts healthcare economy of 2023.[21]

This is not a case about whether commonplace website user tracking technologies are right or wrong, beneficial or harmful as a whole. It is not about whether or not such technologies currently strike the right balance among privacy, functionality, user engagement, and other legitimate considerations. Those are important and nuanced societal questions, on which clear legislative rules of the road would be beneficial, but they are not at issue here. This case is only about whether such commonplace website tracking technologies can violate the ***Massachusetts Wiretap Act*** and, thus, constitute both a potential felony and a basis for millions of dollars of statutory damages against any website owner who employed them within the applicable statute of limitations. For the reasons outlined in BIDMC's opening brief and above, the Court should answer that question in the negative and should dismiss the Complaint, with prejudice.

---

[20] Plaintiff argues that these profound consequences are overstated because website owners need only disclose the presence of tracking technologies to prevent liability. (Opp'n at 24-25.) If only the solution were so simple. BIDMC ***did*** repeatedly disclose such data collection, but Plaintiff claims those disclosures were insufficient so statutory damages are due. And at least fourteen other Massachusetts hospitals, other health care providers, and health insurers already face parallel claims, despite varying degrees of disclosure, with more undoubtedly to come.

[21] See, e.g., "Massachusetts hospitals 'pummeled' by workforce shortage, driving $1.52 billion in temporary labor costs" WGBH, available at https://www.wgbh.org/news/local-news/2023/03/16/massachusetts-hospitals-pummeled-by-workforce-shortage-driving-1-52-billion-in-temporary-labor-costs (last accessed July 31, 2023).

Date: August 4, 2023

Respectfully submitted,

BETH ISRAEL DEACONESS MEDICAL CENTER, INC.

By its attorneys,

*/s/ David Quinn Gacioch*
David Quinn Gacioch (BBO#660784)
Annabel Rodriguez (BBO# 696001)
**McDermott Will & Emery LLP**

DM_US 198277673-6.056777.0081